**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                            No. CR 05-2046 JB

VICTOR MARCELINO MATA,

      Defendant.

**<u>MEMORANDUM OPINION</u>**

**THIS MATTER** comes before the Court on (i): the Defendant's Objections to the Presentence Report, filed February 8, 2006 (Doc. 20); (ii) the Defendant's Second Objections to the Presentence Report, filed February 22, 2006 (Doc. 21); and (iii) the United States' oral objection made at the sentencing hearing to the Presentence Report's recommendation that the Court grant a two-level downward departure based on Mata's severe psychiatric disorders. The Court held a sentencing hearing on February 27, 2006, an evidentiary hearing on April 4, 2006, and a sentencing hearing on April 27, 2006.

The primary issues are: (i) whether the United States has shown by a preponderance of the evidence that Mata used or possessed a firearm in connection with another felony offense; and (ii) whether the Court should exercise its discretion and depart downward based on Mata's mental and emotional health conditions.

Because the United States has not sufficiently shown, by a preponderance of the evidence, that Mata possessed a gun in connection with another felony, the Court will not enhance his sentence under U.S.S.G. § 2K2.1(b)(5). And because the Court believes that a downward departure based

on Mata's mental and emotional health is unwarranted, the Court will exercise its discretion and decline to depart downward.

## PROCEDURAL BACKGROUND

### 1.   Presentence Report.

#### a.   Paragraph 18.

Paragraph 18 on page 6 of the PSR addresses the Specific Offense Characteristic and states: "Pursuant to 2K2.1(b)(5), if the defendant used or possessed any firearm or ammunition in connection with another felony offense, increase by four levels." PSR ¶ 18, at 6 (disclosure date December 28, 2005). The PSR states that the Albuquerque Police Department obtained a search warrant to search Mata's residence. See id. "On August 26, 2005, officers executed the search warrant and found a firearm and ammunition inside the defendant's residence." Id.

The PSR further states that, just before executing the search warrant, officers contacted Mata as he was leaving his residence and found him to be in possession of a small glass bottle containing a rock-like substance, which field-tested positive for crack cocaine. See id. Consequently, Mata was arrested. See id. Because Mata was found to be in possession of a quantity of crack cocaine immediately after exiting his residence where shortly thereafter an illegal sawed-off Hermitage Arms, 12 gauge shotgun was found, the PSR stated that "it can be reasonably concluded that [Mata] possessed a firearm in connection with another felony offense." Id. The United States Probation Office ("Probation") therefore concluded that a four-level increase is warranted. See id.

#### b.   Paragraph 29.

Paragraph 29 of the PSR reflects information that the Sixth Judicial District Court of Grant County in Silver City, New Mexico provided to Probation. See PSR ¶ 39, at 8. The PSR states that

Mata was arrested on July 1, 1972 at age 23.  See id.  Count I of the indictment from the Sixth Judicial District Court of Grant County in Silver City, New Mexico, Case No. CR72-11897, charged Mata with Aggravated Burglary, which is a felony.  See id.  Count II charged Mata with Aggravated Assault.  See id. at 9.  Mata was represented by counsel.  See id.

At trial on October 25, 1972, a jury found Mata guilty on both counts, and on November 13, 1972, the state court sentenced Mata to ten to fifty years in prison.  See id. at 8.  On July 10, 1974, however, the New Mexico Court of Appeals reversed the judgment and sentence as to Count II.  See id. at 9.

On November 17, 1977, the state paroled Mata.  See id. at 8.  On April 10, 1979, the state arrested Mata again, and on September 24, 1979, he was remanded to prison after his parole was revoked.  See id. at 8-9.  On February 2, 1981, the state again paroled Mata.  See id. at 9.  On April 4, 1981, he was arrested again, and on June 1, 1982, he was remanded to prison after parole was revoked.  See id.  On August 1, 1985, the state paroled Mata, but on February 28, 1995, he was again remanded to prison after parole was revoked.  See id.  He was discharged sometime before November 2, 1998.  See id.

The PSR also states that "details of these offenses are presently unknown."  Id.  Probation requested the arrest report, but had not yet received it.  See id.  Under U.S.S.G. § 4A1.1(a), three criminal history points were assessed.  See id. at 8.

### c.    Paragraph 49.

Paragraph 49 discusses Mata's mental and emotional health.  See id. ¶ 49, at 17-18.  The PSR indicates that Mata reported, and that his medical records from the University of New Mexico Hospital confirm, he has a history of depression/anxiety and Post Traumatic Stress Disorder

("PTSD"), resulting from his experience during the Santa Fe prison riot in 1980.  See id. at 17.  Mata reported that, at the age of twenty, he attempted suicide a couple of times while he was in prison in New Mexico.  See id.

As a result, Mata received some mental health treatment while in custody.  See id.  When Mata was last discharged from the hospital on July 9, 2005, he was taking "Fluoxetine 10 mg once a day, which is used to treat psychiatric disorders such as depression," and "Risperidone 1 mg twice a day, which is an atypical antipsychotic drug used to treat the symptoms of schizophrenia and related psychiatric disorders."  Id.  Moreover, Mata reported he was going to a psychiatrist at the University of New Mexico Mental Health Center before his arrest on this offense, but he could not recall his psychiatrist's name.  See id. at 17-18.  Mata further advised he is still taking anti-depressants, but Probation stated that the current list of his psychiatric medications is presently unknown.  See id.

> d.      Paragraph 74.

After reviewing Mata's criminal and social history, and the details of this offense, Probation determined that Mata's poor physical health is a factor that "*may* warrant departure."  See id. ¶ 74, at 21 (emphasis in original).  Pursuant to U.S.S.G. § 5H1.4 Physical Condition (Policy Statement), "physical condition or appearance . . . is not ordinarily relevant in determining whether a departure may be warranted."  Probation further stated that "an extraordinary physical impairment may be reason to depart downward where a form of punishment, such as home confinement, might be equally efficient as and less costly than incarceration."  Id.

According to Mata's medical records that the University of New Mexico Hospital provided, Mata has been to the emergency room and/or admitted into the hospital at least seven times since January 2005.  See id.  His main complaints have been of chest pain and "syncope, which is the

temporary loss of consciousness because of a sudden decline in blood flow to the brain." Id. at 21-22.  In addition, his medical records also indicate that he has a history of dilated "cardiomyopathy, which is the most common form of heart muscle disease"; in Mata's case, alcohol abuse caused this condition.  Id. at 22.  The records show Mata also has a history of "coronary artery disease; hypertension; and Gastroesophageal Reflux Disease ("GERD"), which caused a condition called Barrett's esophagus, which is a change in the color and composition of the cells lining the lower esophagus because of repeated exposure to stomach acid." Id.

Probation states that "[i]t appears Mata suffers from a number of serious medical conditions." Id. ¶ 75, at 22.  Probation concluded, however, that, "when the seriousness and extent of [Mata]'s criminal history is taken into consideration, it appears a downward departure would not sufficiently accomplish the sentencing goals of punishment, deterrence, and protection of the public." Id. Probation identified no additional departure issues.  See id.

### 2.   Objections.

Mata has notified the Court of four objections; he objects to paragraphs 18, 29, 49, and 74 of the Presentence Report.

### a.   Paragraph 18.

First, It is Mata's position that he was not in possession of crack cocaine at the time the Albuquerque Police Department arrested him and that he was not in close proximity to his apartment, where the firearm was located.  See Objections to the Presentence Report ¶ 1, at 1.  Mata contends that the Albuquerque Police Department never conducted a proper paper chemical analysis of the small amount of a substance that was found in his pocket upon his arrest.  He contends that the substance was nitroglycerin used for his heart condition and was not a controlled substance.  See id.

at 1-2.

> **b.** **Paragraph 29.**

Mata objects to paragraph 29 at page 8 of the PSR.  See Objections to the Presentence Report ¶ 3, at 2.  Mata requests that he be provided with copies of any records that Probation used and that allegedly indicated that the three criminal history points should be assessed.  See id.

> **c.** **Paragraph 49.**

Mata objects to paragraph 49 on page 17 of the PSR, because it does not include any mental health treatment records that Probation has reviewed.  See Objections to the Presentence Report ¶ 3, at 2.  Mata wants to know the treatment he has received in connection with the serious mental health disorders.  See id.  Mata indicated to the PSR writer at the time of his interview that the University of New Mexico mental health center had treated him for his mental health problems.  See id.  It is Mata's position that a review of any mental health treatment records and other information concerning the treatment regime or medication that physicians have used to treat Mata would assist the Court and the United States Bureau of Prisons ("BOP").  See id. at 2-3.  Mata similarly notes that paragraph 49 does not include any social security disability records in connection with Mata's social security disability income, which he has been receiving for quite some time.  See id. at 3.  It is Mata's position that the social security disability authorities must have had some medical records available to them when they made the decision to find that Mata is disabled.  See id.  Mata also contends that information from the social security disability authorities bearing upon his physical and mental disabilities and their treatment would assist the Court and BOP.  See id.

> **d.** **Paragraph 74.**

Mata objects to paragraph 74 on page 21 of the PSR.  See id. ¶ 4, at 3.  Mata contends that

this paragraph fails to list any physical or mental disabilities from which Mata suffers.  See id.  Mata

further contends that the mental health disabilities from which he suffers are not so common as to be

routinely found in the heartland of similarly situated criminal defendants.  See id.  Regardless whether

Probation concludes that Mata is worthy of a downward departure as a result of his mental and

physical disabilities, he believes that those mental and physical disabilities are possible grounds for

a departure and that a summary of those disabilities would be of assistance to the Court as it assesses

whether Mata may be eligible for a departure.  See id.  Mata also contends that, "under the current

Supreme Court ruling in [United States v.] Booker/Fan Fan, [543 U.S. 220], (2005), it is the

Probation Department's job to provide the Court with information concerning the relevant sentencing

factors included in 18 U.S.C. § 3553 so that it can issue a reasonable sentence."  Id.

> ### 3.   Third Addendum to the PSR.

On February 15, 2006, Mata's counsel received a document entitled "Third Addendum to the

Presentence Report."   Defendant's Second Objections to the Presentence Report ¶ 1, at 1.  In the

document, Probation responds to Mata's February 8, 2006 objections.  See Third Addendum to the

Presentence Report.

> #### a.   Paragraph 18.

Probation responded to Mata's objections.  See Third Addendum to the Presentence Report

at 1.  After receiving Mata's objections, and after reviewing the PSR, it remains Probation's

assessment that it properly applied, pursuant to U.S.S.G. § 2K2.1(b)(5), the four-level increase.  In

the discovery material that the United States Attorney's Office provided, there is an Albuquerque

Police Department incident report dated August 26, 2005, which states, in part:

On this date I served the attached search warrant at 719 7th St. NW at 1735 hours,

in reference to the trafficking of narcotics.  The suspect, Victor Mata, was stopped outside of the apartment after he was seen leaving and locking the apartment as he left.  He was stopped outside of the apartment for officer safety, due to the fact that we had information from a previous narcotics arrest, that he had a sawed off shotgun inside the apartment.  We believed that when he locked the door behind him as he left, meant that no one else was in the apartment and after Victor Mata was stopped he also confirmed that no one else was inside his apartment.  Surveillance of the apartment continued as officers detained Victor Mata at Lomas and Keleher NW....  No one entered the apartment while officers were out with Victor Mata down the street.  A search of Victor Mata was conducted by Officer T. Griego and $299.00 dollars in cash was located in his wallet, which is consistent with the trafficking of illegal narcotics.  A small glass bottle with no label was also removed from his front pocket and it contained several very small rocks which Victor Mata described as his nitroglycerin for his heart, but they were not shaped like pills.  Victor said he broke the pills up into smaller ones and that was why they looked that way.  Officer D. Wulff field tested the substance and it came back presumptive positive for cocaine.  Victor Mata was arrested....  Officer C. Holmes contacted a pharmacist who verified that nitroglycerin would not test positive for cocaine.

Third Addendum to the Presentence Report at 1-2.  Probation maintains that, based on the events described in the August 26, 2005 incident report, Mata was alone inside his apartment, where the sawed-off shotgun was later found.  See id. at 2.  Because Mata and his apartment were under surveillance by the Albuquerque Police Department, officers observed Mata exit his apartment and lock the door before they apprehended him "down the street."  Id.  Probation asserts that, from this observation, the Court can reasonably conclude that Mata did not have the opportunity between leaving his apartment and being arrested down the street to obtain the small glass bottle containing the rock-like substance, which later field-tested presumptive positive for cocaine.  See id.

Probation maintains that, as a result of Albuquerque Police Department's observations, the Court can also reasonably conclude that Mata must have had the small glass bottle containing the suspected cocaine while he was inside his apartment where the sawed-off shotgun was found.  See id.  It is therefore Probation's contention that Mata possessed a sawed-off shotgun in connection with

-8-

another felony offense -- possession of cocaine.  See id.  Probation also notes that the four-level

increase, pursuant to U.S.S.G. § 2K2.1(b)(5), does not depend on whether the "connected" criminal

charges were brought or a conviction was obtained; what is important is that defendant possessed the

firearm "in connection with another felony offense, United States v. Bryant, 349 U.S. 1093 (8th Cir.

2003)."  Id.

The Third Addendum to the Presentence Report also includes a second factual circumstance

that Probation states "may" warrant a four-level increase pursuant to U.S.S.G. § 2K2.1(b)(5) and

includes an excerpt from an Albuquerque Police Department incident report:

> On August 18th, 2005[,] I received information at the north valley substation of
> possible drug dealing at 719 7th St. NW.  At approximately 1700 hours Officer D.
> Lopez set up in an undercover vehicle in a place in which he could clearly view 719
> 7th St. NW . . . . A Silver 2 door Chevy Cavalier . . . and 2 occupants left the
> apartment . . . .  I stopped that vehicle for a traffic violation . . . . I then asked to
> search the vehicle . . . .  A plastic bag with a white powdery substance was also
> located under the passenger seat and Joshua Howell informed me that he had to tell
> me the truth, and that it was crack . . . .  I conducted a search of Joshua Howell and
> I was told by Joshua that he had crack in his sock which was recovered and was field
> tested by Officer T. Griego and tested presumptive positive for cocaine.  Joshua
> Howell told me that he bought 4 rocks of crack from a guy at 719 7th St. NW who
> he only knows as Victor . . . .  Joshua Howell said that he has purchased crack at least
> 5 times in the last month [and] a half at that same apartment.  He also told [] me that
> the subject known as Victor showed him a weapon which was described as a sawed
> off shotgun . . . .  A warrant was obtained for the apartment located at 719 7th St.
> NW.

Third Addendum to the Presentence Report at 1-2.

### b.    Paragraph 29.

After reviewing Mata's objection, and after reviewing paragraph 29, Probation maintains that

the three criminal history points were properly applied.  See id. at 3.  Pursuant to U.S.S.G. §

4A1.2(k)(2)(B), "[r]evocation of . . . parole . . . may affect the time period under which certain

-9-

sentences are counted, as provided in § 4A1.2(d)(2) and (e)."  The Guidelines state that, "[f]or the purposes of determining the applicable time period, use the following: (i) in the case of an adult term of imprisonment totaling more than one year and one month, the date of last release from incarceration on such sentence."  U.S.S.G. § 4A1.2(k)(2)(B).

In the case listed in paragraph 29, Mata was sentenced to ten to fifty years in prison on November 13, 1972.  <u>See</u> Third Addendum to the Presentence Report at 3.  After being remanded to custody a number of times for parole violations, Mata was last released from incarceration in 1996, which is within fifteen years of the commencement of this offense.  <u>See</u> <u>id.</u>  Probation therefore concludes that, pursuant to § 4A1.1(a) and § 4A1.2(e)(1), an assessment of three criminal history points is warranted.  <u>See</u> <u>id.</u>  The State of New Mexico Parole Board confirmed that Mata was released in 1996; however, Probation notes that further research is needed to determine his exact date of release.  <u>See</u> <u>id.</u>

Probation provides documents for the Court's and Mata's review.  <u>See</u> Documents Attached to Third Addendum to the Presentence Report.

### c.      Paragraph 49.

Probation states that it derived the information regarding Mata's mental and emotional health in paragraph 49 from information that Mata provided and from Mata's medical records that the University of New Mexico Hospital provided.  <u>See</u> <u>id.</u> at 3.  These medical records discuss Mata's physical health issues and only briefly mention his mental health issues.  <u>See</u> <u>id.</u>  Probation submitted a request for medical records to the University of New Mexico Psychiatric Center, but as of February 10, 2006, Probation had not received those records.  <u>See</u> <u>id.</u> at 3-4.  Probation states that, if it received those records before Mata's sentencing hearing, it would forward them to the Court for

-10-

review.  See id. at 4

        **d.**    **Paragraph 74.**

After receiving Mata's objection, and after reviewing paragraph 74, Probation's opinion remains that the paragraph adopted addresses Mata's physical disabilities as they "relate to a possible downward departure . . . ." Id.  Probation further states: "Currently, the United States Probation Office does not have adequate information regarding the defendant's mental disabilities to note them as factors that may warrant a departure." Id.

    **4.**    **The Defendant's Second Objections to the PSR.**

On February 22, 2006, Mata filed a second set of formal objections to the PSR.  See Defendant's Second Objections to the Presentence Report.  Mata continues his objection to Probation's failure to document fully Mata's mental health situation. See id. ¶ 5, at 2.  Mata indicates that the PSR does not contain any records from the UNM Mental Health Center, from which he has received treatment for a number of years.  See id.  Mata complains that Probation has still failed to recover any records from the Social Security Administration, which awarded Mata full disability based upon his mental health status.  See id.

Mata points out that his mental health conditions are unique and fall outside of the heartland of mental health issues that are normally not considered as grounds for a departure.  See id. ¶ 5, at 3.  Mata notes that 18 U.S.C. § 3553 requires that the Court balance a number of factors when issuing a sentence.  See id.  Mata maintains that mental health disabilities are an area that § 3553 contemplates as one of an array of factors the Court must consider.  See id.

    **5.**    **The Unites States' Response to Mata's Objections to the PSR.**

The United States responded to Mata's objections.  See Response to Defendant's Objections

to the Presentence Report, filed February 24, 2006 (Doc. 22).  The United States agrees with Probation's response to Mata's objections to the PSR.  See id. ¶ 1, at 1.  The United States represents that, if need be, it will present Officer Wulff's and Officer D. Lopez' testimony at the sentencing hearing.  See id. ¶ 2, at 1.

In regard to Mata's request for a downward departure, the United States noted that it is Mata's burden of providing the medical records of his mental disabilities to the Court so that it can assess whether a downward departure is warranted.  See id. ¶ 3, at 1.  In addition, the United States requests the opportunity to review those records so that it can respond to Mata's request for a downward departure.  See id. ¶ 4, at 1.

6.      **Fourth Addendum to the PSR.**

In response to the Defendant's Second Objections to the Presentence Report, Probation prepared a Fourth Addendum to the Presentence Report.  Probation stands by its original use of the factual scenario occurring on August 26, 2005, to assess the four-level increase, because it is Probation's contention that Mata possessed a sawed-off shotgun in connection with another felony offense -- possession of cocaine.  See Fourth Addendum to the Presentence Report at 1 (signed February 23, 2006).  In the Fourth Addendum, Probation agrees with Mata concerning the use of the August 18, 2005 events to establish a four-level increase:

> Upon review of the Third Addendum to the Presentence Report, it is this officer's opinion that the defendant makes a valid point in that it strains logic to suggest he possessed a firearm found on August 26, 2005, in connection with a separate felony offense which took place on August 18, 2005, prior to the time he was discovered with the firearm.  Therefore, the United States Probation Office retracts its inclusion of the August 18, 2005, factual scenario on page 2 of the Third Addendum to the Presentence Report as support for applying a four-level increase to the base offense level, pursuant to U.S.S.G § 2K2.1(b)(5).  However, the United States Probation Office stands by its original use of the factual scenario occurring on August [26],

2005, to assess the four-level increase, because it is this officer's contention that the defendant possessed a saw-off shotgun in connection with another felony offense, that being possession of cocaine.

Id. at 1.

On February 21, 2006, Probation received the information regarding Mata's mental health from the UNM Psychiatric Center in Albuquerque, New Mexico.  See id. at 2.  According to Mata's mental health records, he was initially referred to the UNM Psychiatric Center on February 3, 1981, as part of his parole conditions.  See id.  At that time, Mata advised that he had therapy while in prison, which helped him with his anger and frustrations.  See id.

Mata also advised that he did not remember much about his childhood, especially the years before he turned ten.   See id.  According to Mata, he spent most of his younger life being moved from one foster home to another and was eventually sent to the New Mexico Boys' School in Springer, New Mexico.  See id.  Mata stated that he did not know why he was sent to the New Mexico Boys' School, but he mentioned that "it was  his anger toward other people that got him into trouble in the first place."  Id.

Additionally, Mata reported that he had been in several accidents in which he received head injuries.  See id.  These accidents reportedly occurred while Mata was under the influence of alcohol.  See id.  Mata further advised that he used to drink alcohol heavily, but he did not feel it would be a problem for him at that time, as he attended Alcoholic's Anonymous meetings while in prison.  See id.  Mata also denied using drugs then or in the past.  See id.  On the day of Mata's referral, the therapist listed his diagnostic impression as "life circumstance problem."  Id.

Shortly thereafter, Mata began mentioning that he was experiencing "flashbacks" from the Santa Fe prison riot in 1980.  Id.  Despite these "flashbacks," the therapist's notes indicate Mata "was

starting to adjust well to life outside of prison and was doing well in therapy" until he was arrested for stealing a vehicle and driving while under the influence in April 1981.  Id.  As a result, Mata was remanded to prison for parole violations.  See id.

Mata was again referred to the UNM Psychiatric Center on August 6, 2002.  See id.  During an assessment of Mata, it was noted that Mata had "substantial chronic trauma, such as abandonment and polio, beginning in infancy and lasting well into adulthood."  Id.  Probation also noted that, at that time, Mata disclosed he was "severely physically, sexually and emotionally abused during his time in foster homes and orphanages."  Id.

Probation also notes that Mata may have learning disabilities, as he did not learn to write or to spell until he was 13 or 14 years old.  See id.  In addition, Probation notes that Mata had a probable traumatic brain injury "as a result of multiple head traumas caused by motor vehicle accidents, assaults, and abuse."  Id.  Mata was also assessed to have significant problems with impulse control, and it was mentioned that he has a history of violence.  See id.

At the time of the August 2002 assessment, Mata stated that "he does not like to get angry," but he will "respond violently to a perceived threat or when he is having a flashback."  Id.  Probation further notes that Mata has a history of "Post Traumatic Stress Disorder (PTSD), depression, Antisocial Stress Disorder, and alcohol dependency, and that he was experiencing flashbacks, intrusive memories, and hypervigilence."  Id. at 2-3.  Finally, the records indicate that Mata "denied having suicidal or homicidal ideation or intent, audio or visual hallucinations, or delusions."  Id. at 3.

For a third time, Mata was referred to the UNM Psychiatric Center on February 13, 2004. See id.  After being assessed, Mata was diagnosed with all of the same disorders as already listed, and

he admitted at that time that he had a "history of substance abuse involving marijuana." Id.  By this time, it was noted that Mata had "begun receiving Supplemental Security Income (SSI) for having a psychiatric disability."  Id.

According to Mata's records, he began complaining of "blackouts" in April 2004.  Id. Mata was taken to the emergency room on January 3, 2005, when he had an "episode of flashbacks and then went on a three-day drinking binge after having been sober for the previous three years."  Id. Mata was discharged to sobering services.  See id.  It appears that the most recent entry in Mata's mental health records is dated February 16, 2005, and it is a note, written by his therapist, in which she indicates that "Mata did not show up for his appointment on that date."  Id.

After assessing Mata's criminal and social history, and the details of this offense, Probation determined that Mata's severe mental health conditions are factors that may warrant a departure.  See id.  Pursuant to U.S.S.G. §5H1.3, "mental and emotional conditions are not ordinarily relevant in determining whether a departure is warranted, except, as provided  in [U.S.S.G.  § 5K2.0] (Other Grounds for Departure)."   According to U.S.S.C. § 5K2.0(a)(4), "an offender characteristic . . . identified in Chapter Five, Part H (Offender Characteristics) . . . as not ordinarily relevant in determining whether a departure is warranted may be relevant to the determination only if such offender characteristic . . . is present to an exceptional degree."

Probation states that it appears Mata's mental health issues are present to an exceptional degree.  See Fourth Addendum to the Presentence Report at 3.  Mata's mental health records indicate that he has history of PTSD, depression, and Antisocial Personality Disorder.  The records further indicate that, as a result of his PTSD, Mata suffers from flashbacks, blackouts, intrusive memories, and hypervigilence.  Based on Mata's severe psychiatric disorders, it appears to Probation that his

case falls outside the heartland of similarly situated defendants.  See id.

Probation therefore believes that a downward departure is warranted.  See id.  Probation notes, however, that Mata also has a significant problem with impulse control and has a history of violence.  See id.  Probation asserts that Mata, by his own admission, will respond violently to a perceived threat or when he is having a flashback.  See id.  As a result, Probation is concerned about the protection of the public.  See id.

Probation is also concerned about Mata's need for appropriate mental health treatment, which he will be able to receive from BOP.  See id.  Probation also asserts that, based on the number of times Mata's terms of probation and/or parole have been revoked in the past, it appears that he generally does not  do well on supervision.  See id.  Given all of these factors, it is Probation's contention that a two-level downward departure in the offense level is appropriate in this case.  See id.

### 7. **February 27, 2006 Hearing.**

At the February 27, 2006 hearing, Mata's counsel represented that both sides needed more time to review mental health records.  See Transcript of Hearing at 3:2-8; 4:1-19 (taken February 27, 2006).[1]  The United States indicated that, if the Court continued the hearing, it would likely have the substance taken from Mata tested by a chemist.  See id. at 3:7-25.  The United States indicated that it would expedite the testing.  See id.

### 8. **April 4, 2006 Hearing**.

At the April 4, 2006 hearing, Mata confirmed that his only remaining objection to the

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Presentence Report ("PSR") concerned Paragraph 18 -- the proposed four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(5). See Transcript of Hearing at 3:1-15 (taken April 4, 2006). At the April 4, 2006 hearing, the United States presented testimony from Albuquerque Police Department Officers Derrick Wulff and Donald Lopez, and Detective Danny Garcia, concerning the August 18, and August 26, 2005 events described in the PSR and the Third Addendum to the PSR, which events the United States contends warrant an upward departure pursuant to U.S.S.G. § 2K2.1(b)(5). See Transcript of Hearing at 3:16-48:22.[2]

## LAW REGARDING DEPARTURE

The United States Court of Appeals for the Tenth Circuit has "generally held that if the weapon facilitated or had the potential to facilitate the underlying felony, then enhancement under § 2K2.1(b)(5) is appropriate. . . . Further a weapon's proximity to narcotics may be sufficient to provide the nexus necessary to enhance a defendant's sentence under § 2K2.1(b)(5)." United States v. Browning, 252 F.3d 1153, 1159-60 (10th Cir. 2001)(citations and internal quotations omitted).

---

[2] At the hearing, Mata objected to the introduction of hearsay testimony, relying on the United States Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004). See Transcript of hearing at 7:3-7 (taken April 4, 2006). The Supreme Court in Crawford v. Washington held that the Sixth Amendment precludes testimonial hearsay evidence unless the declarant is unavailable and the defendant had a previous opportunity to cross-examine the declarant. See id. at 68. Mata argued that Crawford applied to sentencing proceedings. See Transcript of Hearing at 7:3-7; 8:1-10 (taken April 4, 2006). The United States Court of Appeals for the Tenth Circuit has stated: "[Crawford] in no way suggests, however, that we must alter the standards of admissibility for hearsay evidence in sentencing proceedings. Thus, our established rule on that subject remains unchanged in the wake of Crawford. This Court has determined that the Confrontation Clause does not apply at noncapital sentencing proceedings under the Guidelines." United States v. Phillips, No. 04-6371, 2006 U.S. App. Lexis 3156, at *10-11 (10th Cir. February 8, 2006). See United States v. Ernesto Luciano, 414 F.3d 174, 179 (1st Cir. 2005)("By its own terms, Crawford does not address whether the Sixth Amendment right to confront witnesses applies at sentencing. . . . Nothing in Crawford requires us to alter our previous conclusion that there is no Sixth Amendment Confrontation Clause right at sentencing.").

The enhancement [pursuant to § 2K2.1(b)(5)] is not appropriate if possession of the weapon is coincidental or entirely unrelated to the offense. United States v. Brown, 314 F.3d 1216, 1222 (10th Cir. 2003)(citing United States v. Walters, 269 F.3d 1207, 1219 (10th Cir. 2001)).

### ANALYSIS

The Court finds that the United States has not shown by a preponderance of the evidence that Mata possessed a gun in connection with another felony -- possession of crack cocaine.  Also, although the Court believes that Mata may suffer from severe psychiatric disorders that place him outside the heartland of similarly situated defendants, the Court will choose to exercise its discretion and not depart downward in the interest of public safety and because it believes that the BOP can effectively treat Mata.

1.      **Paragraph 18.**

First, at the April 4, 2006 hearing, the United States conceded that the substance found in Mata's pocket on August 26, 2005 could not be crack cocaine, and stipulated that it was "probably" nitroglycerin.  Transcript of Hearing at 25:4-11.  Thus the substance found in Mata's pocket in connection with the shotgun found in his apartment does not warrant a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(5).

Second, the Court concludes that the United States has not sufficiently shown with the testimony at the sentencing hearing, by a preponderance of the evidence, that Mata possessed a gun in connection with another felony, and the Court will not enhance his sentence under U.S.S.G. § 2K2.1(b)(5).  Wulff testified that: (i) he received a citizen complaint of "heavy traffic that was consistent with illegal sale of narcotics at 719 [S]eventh [S]treet"; (ii) as the officers were conducting surveillance, a silver car pulled up, and two of its occupants went inside Mata's apartment; (iii) after

30 minutes, the occupants returned to the car and drove away; (iv) Wulff followed the car, and thereafter initiated a traffic stop of the silver car; (v) he arrested one of the occupants for possession of crack cocaine; (vi) the occupant told Wulff that he had purchased the crack cocaine at Mata's apartment and that he had purchased drugs from Mata, and he described a shotgun that was in the apartment; and (vii) the officers obtained a search warrant for Mata's apartment, and when they executed the warrant, they found a shotgun in Mata's bedroom.  Transcript of Hearing at 6:1-11:4 (taken April 4, 2006)(Wulff).

Although the Court finds that the witnesses were credible, much of the testimony involved hearsay, and the Court cannot determine the reliability of such hearsay.  Indeed Wulff stated that he had no familiarity with whether the informant, who told him that he bought cocaine from Mata, was a truthful person.  See id. at 12:13-15.  Because the Court cannot, in large part, determine the reliability of the out-of-court statements, especially the out-of-court declarant's statements that he obtained drugs from Mata, the Court finds that the United States has not shown, by a preponderance of the evidence, that Mata possessed a gun in connection with another felony.  A four-level increase is therefore inappropriate.

**2.      United States' Oral Objection to Downward Departure for Medical Conditions.**

The United States objected at the April 4, 2006 evidentiary and sentencing hearing to any downward departure based on Mata's medical condition.  See Transcript of Hearing at 34:3-7; 34:12-39:13 (taken April 4, 2006).  Although the Court believes that Mata may suffer from severe psychiatric disorders that place him outside the heartland of similarly situated defendants, and that a downward departure may be authorized, his conditions exhibit themselves in antisocial behavior and place society at risk of harm, and the Court therefore chooses to exercise its discretion, and in the

interest of public safety, and because it believes that BOP will be able to effectively treat Mata, will not depart downward.

The Court finds that: (i) the United States has not shown by a preponderance of the evidence that Mata used or possessed a firearm in connection with another felony offense; although the Court may consider the hearsay presented at Mata's sentencing, the Court believes that such evidence was relatively weak, and in this case was not sufficiently reliable to show by a preponderance of the evidence that Mata possessed a gun, facilitating his alleged possession of cocaine; and (ii) although the Court agrees with Probation that Mata may suffer from severe psychiatric disorders that place him outside the heartland of similarly situated defendants, and that a downward departure may be authorized, his conditions exhibit themselves in antisocial behavior and place society at risk of harm, and the Court therefore chooses to exercise its discretion, and in the interest of public safety, and because it believes that BOP will be able to treat Mata, will not depart downward.

Because the United States has not sufficiently shown, by a preponderance of the evidence, that Mata possessed a gun in connection with another felony, the Court will not enhance his sentence under U.S.S.G. § 2K2.1(b)(5).  Because the Court believes that a downward departure based on Mata's mental and emotional health is unwarranted, the Court will exercise its discretion and decline to depart downward.

**IT IS ORDERED** that the Defendant's Objections are sustained in part and overruled in part as moot.  The Court will not enhance Mata's sentence pursuant to U.S.S.G. § 2K2.1(b)(5).  The United States' oral objection to the Presentence Report is sustained.  The Court will not depart downward based on Mata's mental and emotional health.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

David C. Iglesias
  United States Attorney for the
    District of New Mexico
Louis E. Valencia
  Assistant United States Attorney for the
    District of New Mexico
Albuquerque, New Mexico

       *Attorneys for the Plaintiff*

Thomas B. Jameson
Joseph Gandert
  Federal Public Defenders
Albuquerque, New Mexico

       *Attorneys for the Defendant Victor Marcelino Mata*